# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**STEPHANIE DICKENS,**

    **Plaintiff,**

v.                                          CASE NO.: 8:19-cv-02529-TPB-AEP

**PEPPERIDGE FARM INCORPORATED,**

    **Defendant.**

_____/

## PLAINTIFF'S MOTION IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff, STEPHANIE DICKENS ("Plaintiff"), by and through undersigned counsel, (Doc. 25), hereby files this Response in Opposition to Pepperidge Farms', PEPPERIDGE FARM INCORPORATED ("Defendant" or "Pepperidge Farms") Motion to Dismiss Plaintiff's First Amended Complaint. As more fully set forth herein, this Court should deny Defendant's motion because Defendant is attempting to hold Plaintiff's Amended Complaint to a heightened pleading standard that exceeds the requirements of the Federal Rules of Civil Procedure. Defendant has misunderstood the legal standard that this Court must apply in examining motions to dismiss in employment discrimination cases. Finally, Plaintiff has adequately pled specific and detailed factual allegations that make her claims not only plausible, but probable. As such, Plaintiff respectfully requests that this Court deny Defendant's Motion to Dismiss her Amended Complaint and allow Plaintiff's case to be decided on the merits. In support of her motion, Plaintiff states as follows:

# TABLE OF CONTENTS

I. FACTUAL AND PROCEDURAL BACKGROUND ........................................................ 1

    A. Factual Allegations Regarding Pepperidge Farms' Cockroach Infestation. ............ 1

    B. Plaintiff's Opposition to Defendant's Decision to Not Properly Sanitize Pepperidge Farms' Roach-Infested Gluten Tanks. ................................................ 2

    C. Pepperidge Farms Continues to Retaliate Against Plaintiff Because of Her Complaints About Defendant's Handling of the Roach Infestation. ...................... 3

    D. Plaintiff's Wages Dropped from an Approximate Yearly Amount of $75,000 to $36,000 in the Year That She Opposed How Pepperidge Farms Handled the Roach Infestation. ................................................................................ 3

    E. Factual Allegations Regarding the Timeliness of Plaintiff's Charge of Discrimination. ............................................................................................................ 4

    F. Factual Allegations About Plaintiff's Gender Discrimination Claims. .................. 5

    G. Procedural History ................................................................................................... 6

ARGUMENT ................................................................................................................................ 6

II. STANDARD OF REVIEW. ........................................................................................... 7

III. THIS COURT SHOULD DENY PEPPERIDGE FARMS' MOTION TO DISMISS BECAUSE IT ATTEMPTS TO HOLD PLAINTIFF TO A HEIGHTENED PLEADING STANDARD. .......................................................................................... 8

IV. PLAINTIFF SUFFICIENTLY STATED CLAIMS FOR RETALIATION UNDER THE FPWA, TITLE VII AND THE FCRA. .................................................................. 9

    A. Plaintiff Alleged She Engaged in Statutorily Protected Activity Under the FPWA by Opposing Defendant's Failure to Keep the Food it Produces for Consumers Free from Contaminants. ......................................................................... 9

V. PLAINTIFF SUFFICIENTLY ALLEGED THAT SHE EXHAUSTED HER ADMINISTRATIVE REMEDIES IN ACCORDANCE WITH THIS COURT'S ORDER. ........................................................................................................................... 10

VI. PLAINTIFF'S AMENDED COMPLAINT SUFFICIENTLY ALLEGED THAT PLAINTIFF WAS SUBJECTED TO DISCRIMINATION BECAUSE OF HER GENDER. ......................................................................................................................... 13

VII. LEAVE TO AMEND .................................................................................................... 15

CONCLUSION ........................................................................................................................... 15

# TABLE OF AUTHORITIES

**CASES**                                                                                                                                            **PAGE(S)**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................... 7

*Fatz v. Winn-Dixie Stores, Inc.*,
    Case No. 6:12-cv-1668-Orl-36DAB, (M.D. Fla. Aug. 13, 2013) .......................... 11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................... 7

*Berry v. Essilor of Am., Inc.*,
    123 F. Supp. 2d 1342 (M.D. Fla. 2000) ................................................................. 12

*Rice-Lamar v. City of Ft. Lauderdale*,
    853 So. 2d 1125 (Fla. 4th DCA 2003) ................................................................... 8

*Clark v. Coats & Clark, Inc.*,
    865 F.2d 1237 (11th Cir. 1989) ............................................................................ 12

*Donovan v. Broward Cty. Bd. of Comm'rs*,
    974 So. 2d 458 (Fla. 4th DCA 2008) ..................................................................... 9

*Forehand v. Fla. State Hosp.*,
    89 F.3d 1562 (11th Cir. 1996) .............................................................................. 11

*Mason v. Cole*,
    Case No. 07-80103-Civ-Marra/Johnson, 2008 U.S. Dist. LEXIS 38778
    (S.D. Fla. May 12, 2008) ........................................................................................ 13

*Xu v. Bd. of Trs.*,
    2010 U.S. Dist. LEXIS 964, 2010 WL 107865 (N.D. Fla. Jan. 7, 2010) .............. 10

*Sierminski v. Transouth Fin. Corp.*,
    216 F.3d 945 (11th Cir. 2000) ................................................................................. 9

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506, 122 S. Ct. 992 (2002) ................................................................. 8, 13

*Veale v. Fla. Dep't of Health*,
    Case No: 2:13-cv-77-FtM-38UAM,
    2013 WL 5703577 (M.D. Fla. July 29, 2013) ....................................................... 14

*White v. Dall. Indep. Sch. Dist.*,
    581 F.2d 556 (5th Cir. 1978) ................................................................................ 11

*White v. Purdue Pharm., Inc.*,
   369 F. Supp. 2d 1335 (M.D. Fla. 2005) ................................................................................ 9

*Wilkerson v. Grinnell Corp.*,
   270 F.3d 1314 (11th Cir. 2001) ............................................................................................ 11

*Williams v. Jeremiah's Int'l Trading Co.*,
   Case No: 8:09-CV-152-T-30MAP
   2009 WL 1587216 (M.D. Fla. June 5, 2009) ........................................................................ 8

*Zachary v. Comprehensive Health Mgmt.*,
   Case No.: 8:12-cv-530-T-33AEP
   2012 U.S. Dist. LEXIS 111973 (M.D. Fla. Aug. 8, 2012) .................................................. 13

**STATUTES**

42 U.S.C. § 1981 ........................................................................................................................ 13

42 U.S.C. § 2000e ........................................................................................................................ 5

Fla. Stat. § 448.102 ...................................................................................................................... 9

Florida Civil Rights Act of 1992, as amended (FCRA), Fla. Stat. § 760.01 ............................... 6

Florida Private Whistleblowers Act (FPWA), Fla. Stat. § 448.102 ............................................ 5

**OTHER**

21 C.F.R. § 117.3 ........................................................................................................................ 1

21 C.F.R. § 117.20 ...................................................................................................................... 1

29 C.F.R. § 1601.12 .......................................................................................................... 5, 10, 11

Fed. R. Civ. P. 8 ...................................................................................................................... 7, 8

Fed. R. Civ. P. 12 ........................................................................................................................ 7

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff began working for Defendant in its bakery department approximately nine (9) years ago in 2009. During her lengthy tenure with Defendant, Plaintiff was promoted to General Utility Worker, and she worked in this capacity until her demotion on or about April 2018 and continues to work in a lesser role. (Doc. # 28 ¶ 2). During Plaintiff's employment with Defendant, Plaintiff satisfactorily performed the duties of her position in a competent manner. (Doc. # 28 ¶ 27).

   A.   **Factual Allegations Regarding Pepperidge Farms' Cockroach Infestation.**

Defendant is a food processing Plant within the meaning of 21 C.F.R. § 117.3. (Doc. # 28 ¶ 30). 21 C.F.R. § 117.20(a) mandates that food processing plants, such as the facility Defendant operates, must be kept in a condition that will protect against the contamination of food. (Doc. # 28 ¶ 31). Additionally, 21 C.F.R. § 117.35(c) states that Defendant was required to perform to ensure the cockroach and other pest infestations.[1] (Doc. # 28 ¶ 32). As such, Defendant had a legal obligation to ensure that the national food products that it produces and sells to consumers across the United States and Canada are free from food contamination prom pests such as cockroach infestations. (Doc. # 28 ¶ 33). However, Pepperidge Farms failed its obligations to its customers to keep its food products free of contaminants and also retaliated against Plaintiff because of her opposition to Pepperidge Farms' unlawful failure to sanitize its gluten tanks. (Doc. # 28 ¶ 34).

---

[1] Pest control. Pests must not be allowed in any area of a food plant. Guard, guide, or pest- detecting dogs may be allowed in some areas of a plant if the presence of the dogs is unlikely to result in contamination of food, food-contact surfaces, or food-packaging materials. Effective measures must be taken to exclude pests from the manufacturing, processing, packing, and holding areas and to protect against the contamination of food on the premises by pests. 21 C.F.R. § 117.35(c)

### B. Plaintiff's Opposition to Defendant's Decision to Not Properly Sanitize Pepperidge Farms' Roach-Infested Gluten Tanks.

During the early morning hours of February 22, 2018, Plaintiff observed that Pepperidge Farms' gluten tanks, the main machine it uses to process the food products it sells to consumers nationwide, was infested with cockroaches. The cockroach infestation consisted of roaches, roach feces, and various roach body parts that had gotten inside the wheat gluten tank and were not removed because Pepperidge Farms failed to maintain appropriate pest control as mandated by 21 C.F.R. § 117.20(a). (Doc. # 28 ¶ 35). When Plaintiff noticed the cockroach infestation, she immediately attempted to follow Pepperidge Farms' protocol and informed Pepperidge Farms' sanitation department that federal and state regulations required Pepperidge Farms to remove the cockroach infestation. (Doc. # 28 ¶ 37). Plaintiff also alleged that federal regulations mandated that Pepperidge Farms was required to clean the wheat gluten tank to assess the level of infestation and take measures to eradicate such infestation. (Doc. # 28 ¶ 37).

Plaintiff then informed her supervisor, Derick Hall, of what happened and the measures that needed to be taken to correct the roach infestation in Pepperidge Farms' gluten (Doc. # 40). In clear defiance and disregard to its customers' safety, Pepperidge Farms knowingly failed to perform the required sanitation needed to eradicate the cockroach infestations. Furthermore, Pepperidge Farms prohibited Plaintiff from effectuating the required sanitation protocols needed to rid a gluten tank of cockroach infestations even though she was capable and willing. (Doc. # 28 ¶¶ 40-42).

As alleged in Plaintiff's Amended Complaint, Pepperidge Farms retaliated against Plaintiff because of her complaints about the handling of the roach infestation in Pepperidge Farms' gluten tanks. Pepperidge Farms materially changed the terms and conditions of Plaintiff's employment

on or about April 2018 and these retaliatory changes continue to the present time. (Doc. # 28 ¶ 43).

### C. Pepperidge Farms Continues to Retaliate Against Plaintiff Because of Her Complaints About Defendant's Handling of the Roach Infestation.

Prior to her demotion after Plaintiff complained about Pepperidge Farms' handling of the cockroach infestation, Plaintiff had been promoted to General Utility Worker. At Pepperidge Farms' Lakeland Florida facility, working as a General Utility Worker was a highly coveted position and envied by many of the other individuals Pepperidge Farms employed. (Doc. # 28 ¶ 47). Pepperidge Farms only allows its most skilled employees to be General Utility Worker's because, in order to be a General Utility Worker, you must be able to work any position in Pepperidge Farms' bakery department at any given time and with little to no notice. (Doc. # 28 ¶ 48).

Prior to the cockroach incident, Plaintiff had worked as a General Utility Worker for approximately (4) years. Yet, in a mere two (2) months after making the complaint, Pepperidge Farms essentially demoted Plaintiff back to a position of a new hire on or about April 2018. (Doc. # 28 ¶ 49). Pepperidge Farms' demotion of Plaintiff was not in accordance with its standard disciplinary procedures. (Doc. # 28 ¶ 44). Plaintiff alleged that each day she is damaged as a result of the retaliation that Pepperidge Farms continues to subject her to.

### D. Plaintiff's Wages Dropped from an Approximate Yearly Amount of $75,000 to $36,000 in the Year That She Opposed How Pepperidge Farms Handled the Roach Infestation.

Plaintiff estimates that she lost at least $10,000 to $15,000 this year alone. Plaintiff estimates that she has lost approximately Eighty Thousand Dollars ($80,000) because of her pretextual demotion. (Doc. # 28 ¶ 50). For example, Plaintiff made $75,867 in 2016, and she made $75,504 in 2017. However, in 2018, Pepperidge Farms reduced Plaintiff's wages by over fifty

percent (50%). Despite making over $75,000 in the prior two (2) years, Pepperidge Farms dramatically cut Plaintiff's pay to approximately $36,704 in 2018. (Doc. # 28 ¶ 51). Pepperidge Farms drastically reduced Plaintiff's pay despite her lengthy tenure, stellar track record, and superior knowledge of Pepperidge Farms' Bakery department. Prior to her complaints about the roach infestation, Plaintiff had rarely been subjected to disciplinary action. However, almost immediately after Plaintiff opposed the unlawful manner in which Defendant handled the infestation, Pepperidge Farms, took, and continues to take, frivolous disciplinary action against Plaintiff. (Doc. # 28 ¶ 44).

> **E. Factual Allegations Regarding the Timeliness of Plaintiff's Charge of Discrimination.**

Plaintiff, without the assistance of counsel, originally contacted the Equal Employment Opportunity Commission ("EEOC") on or about July 2018 and an appointment was made for August 2018. (Doc. # 28 ¶ 12). The EEOC cancelled Plaintiff's appointment and rescheduled her for October 2018. (Doc. # 28 ¶ 13). In October 2018, the EEOC conducted an interview with Plaintiff and completed the EEOC intake questionnaire. (Doc. # 28 ¶ 14). Plaintiff provided the relevant information to support her claims. (Doc. # 28 ¶ 15). Nevertheless, Plaintiff's Charge of Discrimination was not "received" by the EEOC until purportedly April 29, 2019, even though Plaintiff's signature is dated March 25, 2019. (Doc. # 28 ¶ 16).

Two (2) days later, on May 1, 2019, the EEOC issued Plaintiff a Right to Sue letter. (Doc. # 28 ¶ 17). Plaintiff was in constant contact with the EEOC throughout the approximate eight (8) month time period between completing her questionnaire and the Charge of Discrimination actually getting filed by the EEOC. (Doc. # 28 ¶ 18). In fact, Plaintiff emailed the EEOC Investigator on several occasions after she signed the charge to include additional information about additional incidents as Plaintiff checked the box indicating that the discrimination Defendant

subjected Plaintiff to was a "Continuing Action." (Doc. # 28 ¶ 19). However, the EEOC did not include this information in the charge of discrimination that it helped Plaintiff prepare and file. (Doc. # 28 ¶ 20). Plaintiff alleged that the circumstances surrounding her questionnaire constituted the initial filing of Plaintiff's Charge pursuant to 29 C.F.R. § 1601.12. (Doc. # 28 ¶ 21).

      **F.**      **Factual Allegations About Plaintiff's Gender Discrimination Claims.**

Plaintiff is a woman and is a member of a protected class, and on account of her protected status, Plaintiff performed the job for which she was hired in a satisfactory manner. (Doc. # 28 ¶ 54). Defendant subjected Plaintiff to numerous other disciplinary actions for conduct that it did not reprimand its male employees. (Doc. # 28 ¶ 56). Plaintiff was only approximately two (2) of the ten (10) women who worked as General Utility Workers. (Doc. # 28 ¶ 57). Additionally, Plaintiff and other similarly-situated women who worked as General Utility Workers were given harsher, and more frequent reprimands than their male counterparts were given for the same conduct. (Doc. # 28 ¶ 58). Further, as described herein, Plaintiff has also suffered significant monetary damages. (Doc. # 28 ¶ 60). Plaintiff alleged that Defendant's has a common practice of favoring men over women and for promotions or transfers regardless of their seniority. (Doc. # 28 ¶ 63). Defendant demonstrates this preference by paying men more and allowing them to have more opportunity for growth within the company than it does to Plaintiff and similarly-situated female employees. (Doc. # 28 ¶ 64).

Plaintiff complained about this disparate treatment to Defendant by objecting to Defendant's discriminatory gender employment practices to Defendant's Human Resources ("HR") representatives. (Doc. # 28 ¶ 67). Plaintiff alleged that Pepperidge Farms failed to take remedial action in response to Plaintiff's complaints of gender discrimination. (Doc. # 28 ¶ 68).

### G. Procedural History

Plaintiff's five (5) count Amended Complaint alleges that Pepperidge Farms violated Plaintiff's rights under the Florida Private Whistleblowers Act ("FPWA"), Fla. Stat § 448.102., Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e (2018) *et seq*. and the Florida Civil Rights Act of 1992, as amended ("FCRA"), Fla. Stat. Section 760.01 *et seq*. (*See generally* Doc. # 1-1, 28). On December 6, 2019, Plaintiff filed a brief three (3) page Opposed Motion to Amend Plaintiff's Complaint. (Doc. # 17). In response, Defendant filed a twenty-nine (29) page Response, inclusive of exhibits, in Opposition to Plaintiff's Motion for Leave to File an Amended Complaint in the hopes of having Plaintiff's claims with prejudice without at least one opportunity to amend. (Doc. # 20). Defendant's Motion to Dismiss and its Motion in Opposition to Plaintiff amending her complaint contained essentially the same conclusory allegations. (*Compare* Doc. # 7, 20). As a result of Defendant's motion, this Court scheduled a hearing on January 16, 2020. (Doc. # 25), and this Court granted Plaintiff's motion to amend. (*Id.* § 760.01.) Plaintiff filed her Amended Complaint within the deadline set by this Court on February 18, 2020. Plaintiff's Amended Complaint contains sixty-nine (69) detailed factual allegations relating to her claims. Nevertheless, Defendant filed another Motion to Dismiss Plaintiff Complaint on March 3, 2020. (Doc. # 31)

## ARGUMENT

This Court should deny Defendant's Motion to Dismiss because Plaintiff's Amended Complaint contained sixty-nine (69) detailed factual allegations that more than give notice to Defendant as to the basis for Plaintiff's claims. Defendant's motion is nothing more than a misguided and dilatory attempt to hold Plaintiff to a heightened pleading standard than what is required in employment cases. Plaintiff's Amended Complaint contains numerous factual allegations that sufficiently allege the who, what, where, when, and why as to how Defendant's

discriminatory employment practices violated Plaintiff's rights under the FPWA, Title VII, and the FCRA.

In contrast, Pepperidge Farms either refuses to address any of Plaintiff's well-pled factual allegations. In fact, virtually every sentence in Defendant's motion in a conclusory statement that largely fails to even mention any of Plaintiff's well-pled allegations. Most of the cases cited in its motion are easily distinguishable or do not stand for the propositions that Defendant asserts they support. In its motion, Pepperidge Farms, as the docket demonstrates, has chosen to ignore the detailed factual allegations of the complaint in their entirety and has instead apparently settled on a litigation policy of mud-slinging, bad sportsmanship, and dilatory tactics designed to waste this Court's valuable judicial resources and delay this litigation. Accordingly, Defendant's Motion to Dismiss must be denied.

## II. STANDARD OF REVIEW.

Fed. R. Civ. P. 8(a) requires that a complaint contain a short plain statement of the claim showing that the pleader is entitled to relief. *Id.* To survive a Fed. R. Civ. P. 12(b)(6) motion, the short plain statement must overcome two hurdles. First, the complaint's factual allegations must be enough to give the defendant fair notice of the claim and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Second, the complaint must contain sufficient allegations based on more than speculation to state a claim for relief that is plausible on its face. *Id.* This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Id.* Rather, [a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff submits to this Court that the detailed allegations contained in Plaintiff's Amended Complaint allows the Court to draw the reasonable

inference that Defendant retaliated against her because of her complaints about Defendant's unlawful business practices and gender discrimination.

**III.　THIS COURT SHOULD DENY PEPPERIDGE FARMS' MOTION TO DISMISS BECAUSE IT ATTEMPTS TO HOLD PLAINTIFF TO A HEIGHTENED PLEADING STANDARD.**

This Court should deny Pepperidge Farms' motion to dismiss as it is nothing more than an attempt by Pepperidge Farms to hold Plaintiff to a heightened pleading standard than what is required at the motion to dismiss stage. As the Supreme Court has explicitly held, a heightened pleading standard in employment discrimination cases conflicts with the Fed. R. Civ. P. 8(a)(2). *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S. Ct. 992, 998 (2002). Given that the prima facie case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases. *Id.* . The court should not assess whether a plaintiff will ultimately prevail but consider whether the claimant is entitled to offer evidence to support the claims. *Williams v. Jeremiah's Int'l Trading Co.,* 2009 WL 1587216, at *1 (M.D. Fla. June 5, 2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Pepperidge Farms' motion to dismiss Plaintiff's Amended Complaint must be denied because Plaintiff has gone above and beyond the pleading requirements of Fed. R. Civ. P. 8 by alleging detailed, factual allegations that sufficiently allege that Pepperidge Farms willfully violated the FPWA, Title VII, and the FCRA. Contrary to Pepperidge Farms' meritless arguments, Plaintiff's Amended Complaint unquestionably provides Pepperidge Farms with adequate notice of the claims brought and the factual grounds upon which the claims are based. As such, Pepperidge Farms' Motion must be denied.

## IV. PLAINTIFF SUFFICIENTLY STATED CLAIMS FOR RETALIATION UNDER THE FPWA, TITLE VII AND THE FCRA.

In her Amended Complaint, Plaintiff asserts three claims of under the FPWA, Title VII, and the FCRA. Florida and federal courts have followed federal decisions construing provisions in Title VII that make it unlawful for an employer to retaliate against an employee because the employee made a charge against the employer or opposed an employer's unlawful practice. *Rice-Lamar v. City of Ft. Lauderdale*, 853 So. 2d 1125 (Fla. 4th DCA 2003) (Title VII retaliation analysis applied to claim arising under Florida's Whistle-blower Act); *see also Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945 (11th Cir. 2000) (Title VII retaliation analysis applied to claim arising Under Florida's private-sector whistle-blower provisions). Finally, the FCRA is modeled after Title VII, and decisions construing Title VII are applicable to claims under the FCRA. *Veale v. Florida Dept. of Health*, 2013 WL 5703557 n. 2 (M.D. Fla. July 29, 2013).

### A. Plaintiff Alleged She Engaged in Statutorily Protected Activity Under the FPWA by Opposing Defendant's Failure to Keep the Food it Produces for Consumers Free from Contaminants.

Pursuant to Fla. Stat. § 448.102(3), "[a]n employer may not take any retaliatory personnel action against an employee because the employee has . . . [o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation. A claim under Fla. Stat. § 448.102(3), as with claims for retaliation under Title VII and the FCRA, require the plaintiff to prove (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse employment action was causally linked to the statutorily protected activity. *White v. Purdue Pharm., Inc.*, 369 F. Supp. 2d 1335, 1336 (M.D. Fla. 2005).

Regarding the FPWA, the definitions of retaliation and adverse employment action are derived from F.S. 448.101(5) and case law. *Donovan v. Broward Cty. Bd. of Comm'rs*, 974 So. 2d

458, 460 (Fla. 4th DCA 2008) (adverse employment action is action which would discourage reasonable employee from making or supporting charge of discrimination). Here, Plaintiff alleged that Pepperidge farms retaliated against Plaintiff by taking adverse employment action against her when she reported cockroaches in the gluten machines by, *inter alia*, essentially cutting her pay in half and materially changing the terms and conditions of her employment.

Finally, this Court should also deny Defendant's motion because the third element of this claim – that there is a causal connection between the two events – necessarily calls for a conclusion. As explained by one Court when denying a similar motion to dismiss, the court stated: in this case it is a plausible conclusion if all the facts alleged are taken as true, as they must be on a motion to dismiss. That is sufficient. Pepperidge Farms is on notice of what the claim is and the grounds upon which it *rests. Xu v. Bd. of Trs.*, 2010 U.S. Dist. LEXIS 964, at *2-3, 2010 WL 107865 (N.D. Fla. Jan. 7, 2010). Consequently, the Court should deny Pepperidge Farms' motion to dismiss Plaintiff's Amended Complaint.

### V. PLAINTIFF SUFFICIENTLY ALLEGED THAT SHE EXHAUSTED HER ADMINISTRATIVE REMEDIES IN ACCORDANCE WITH THIS COURT'S ORDER.

Defendant's motion lacks any substance whatsoever and consists of nothing more than conclusory assertions, unwarranted factual deductions, and legal conclusions masquerading as facts. Defendant purposefully ignores the 69 paragraphs contained in Plaintiff's Amended Complaint and relevant case law. As alleged in Plaintiff's Amended Complaint, 29 C.F.R. § 1601.12 states that a Charge should contain the following: (1) The full name, address and telephone number of the person making the charge… (2) The full name and address of the person against whom the charge is made, if known (hereinafter referred to as the respondent); (3) A clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices; (4) If known, the approximate number of employees of the respondent

employer or the approximate number of members of the respondent labor organization, as the case may be; and (5) A statement disclosing whether proceedings involving the alleged unlawful employment practice have been commenced before a State or local agency charged with the enforcement of fair employment practice laws and, if so, the date of such commencement and the name of the agency. Further,29 C.F.R. § 1601.12 provides that:

> (b) Notwithstanding the provisions of paragraph (a) of this section, **a charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of**…

*Id.* (emphasis added). However, even if a charge does not contain the suggested information, the EEOC will deem a charge minimally sufficient when it receives from the charging party 'a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of.' "*Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1318 (11th Cir. 2001) (quoting 29 C.F.R. § 1601.12(b)). "Therefore, the regulations provide two alternative methods of meeting the requirements of a charge: (1) providing the five pieces of suggested information in 29 C.F.R. § 1601.12(a); or (2) providing the "minimally sufficient" information in § 1601.12 (b). *Fatz v. Winn-Dixie Stores, Inc.*, No. 6:12-cv-1668-Orl-36DAB, 2013 U.S. Dist. LEXIS 114055, at *11-12 (M.D. Fla. Aug. 13, 2013).

In *Wilkerson*, 270 F.3d at 1321, a factually similar case, the Eleventh Circuit held that the district court's grant of summary judgment was in error and that the plaintiff timely filed a *Wilkerson*, 270 F.3d at 1322. The *Wilkerson* Court clarified that a "questionnaire containing all requirements of a formal charge can be considered a charge if the circumstances of that particular case "convince a reasonable person that [the plaintiff] manifested her intent to activate the machinery of Title VII by lodging her intake questionnaire with the EEOC" (the "manifest-intent requirement"). *Id.* at 1320 (quoting 29 C.F.R. § 1601.12(b)). The Court concluded that

Wilkerson's circumstances were exceptional ones because she verified her intake questionnaire, specified her allegations, and communication from the EEOC was misleading or ambiguous regarding whether the EEOC was treating the questionnaire as a charge. *Id.* at 1316 (the EEOC had informed Wilkerson that it "would proceed on the basis of her questionnaire").[2]

Like *Wilkerson*, Plaintiff is not an attorney and she was not assisted by the undersigned until after a Right to Sue letter had been issued. (Dkt. 28 ¶ 12). Additionally, Plaintiff likely didn't have a firm understanding of what a Charge of Discrimination was and how it differed from an intake form. Pepperidge Farms asks this Court to take an inequitable view on a mere procedural issue beyond Plaintiff's control. However, while Plaintiff may not have understood the intricate details of what a Charge of Discrimination, she did know to contact the EEOC in order to report discrimination. Furthermore, as in *Wilkerson*, the EEOC's ultimate response, combined with the other relevant facts, would convince a reasonable person that Wilkerson manifested her intent to activate the administrative machinery, and we conclude that she did so.

Plaintiff's completed Questionnaire contained the full name and address of the company against whom the charge was made. The clear and concise statement of facts, as set out within Plaintiff's complaint, included pertinent dates that constituted the alleged unlawful employment practices.[3] (Doc. # 28 ¶ 22). Plaintiff's Charge of Discrimination relates back to her original complaint that she made with the EEOC when she completed the intake questionnaire on October

---

[2] *See Forehand v. Fla. State Hosp.*, 89 F.3d 1562, 1570-71 (11th Cir. 1996) ("Any deficiency in the EEOC's performance of its duties should not adversely affect a plaintiff's right to sue."); *White v. Dall. Indep. Sch. Dist.*, 581 F.2d 556, 562 (5th Cir. 1978) (en banc) ("We think that the EEOC's failure to follow its own regulations sufficiently misled Mrs. White and that their mistakes should not redound to her detriment.").

[3] *See Clark v. Coats & Clark, Inc.,* 865 F.2d 1237, 1240 (11th Cir. 1989) (Eleventh Circuit reversed district court's dismissal of an age discrimination claim because the filing of an EEOC intake questionnaire constituted timely filing of a charge.); *see also Berry v. Essilor of Am., Inc.*, 123 F. Supp. 2d 1342, 1346 (M.D. Fla. 2000) ("It is in keeping with the purpose of the Act to keep the procedure initiating action simple…All that is required is that it [the charge] give sufficient information to enable the EEOC to see what the grievance is all about.").

2018, well within the statutory period. (Doc. # 28 ¶ 23). As such, Plaintiff's claims under Title VII and the FCRA are timely. *See Berry*, 123 F. Supp. 2d at 1346 ("Therefore, the later typed, filed, and sworn statement submitted by the [EEOC] submitted on August 19, 1997, constitutes an amendment to the original Charge of Discrimination and relates back to the original filing date, June 25, 1997 [date questionnaire was submitted to the EEOC]"). Here, and contrary to Defendant's assertions that, he could "represent to the Court, although it hasn't been briefed before the Court today, that there is case law on the issue that says that the filing of the EEOC charge is determined by the date of the timestamp on the EEOC charge. It's not when the plaintiff first brought allegations to the EEOC," [Tr. Of Mot. Hr'g 12:1-6, January 16, 2020], there is no such case law. Rather, Plaintiff's claims relate back to when the EEOC allowed her to complete a questionnaire form in October 2018. As such, this Court should deny Defendant's Motion to dismiss because Plaintiff has sufficiently pled that she exhausted all administrative remedies.

VI. **PLAINTIFF'S AMENDED COMPLAINT SUFFICENTLY ALLEGED THAT PLAINTIFF WAS SUBJECTED TO DISCRIMINATION BECAUSE OF HER GENDER**.

This Court should deny Pepperidge Farms' motion because, at this point, all the Court must determine is whether the claimant is entitled to offer evidence to support the claims, not whether the Plaintiff can ultimately prove the facts alleged in the initial complaint. *Swierkiewicz*, 534 U.S. at 511, 122 S. Ct. 992; Further, as explained by one court:

> A race discrimination plaintiff need not set forth the elements of a prima facie case at the initial pleading stage; rather, because racial discrimination in employment is a claim upon which relief can be granted, **I was fired from my job because of my race**: is all a complaint has to say to survive a motion to dismiss for failure to state a claim.

*Mason v. Cole*, Case No. 07-80103-Civ-Marra/Johnson, 2008 U.S. Dist. LEXIS 38778, at *6 (S.D. Fla. May 12, 2008) (emphasis added). In *Zachary v. Comprehensive Health Mgmt.*, Case No.: 8:12-CV-530-T-33AEP, 2012 U.S. Dist. LEXIS 111973, at *8 (M.D. Fla. Aug. 8, 2012), the Court

denied a defendant's motion to dismiss plaintiff's 42 U.S.C. § 1981 retaliation claim and reasoned as follows:

> Plaintiff has also asserted that after he engaged in protected activity, he was denied access to training (which would allow his to be promoted), that he was issued oral and written reprimands, and that he faced other disciplinary action. This Court finds, at this preliminary juncture, that the prospect of facing disciplinary action might dissuade a reasonable worker from making or supporting a charge of discrimination.

*Id*.

Here, Plaintiff has sufficiently alleged that plausible allegations that Defendant Discriminated against her because of her gender and retaliated against her because of her complaints for the same. Under Title VII and he FCRA, a plaintiff must prove: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) she was treated less favorably than a similarly situated individual outside [her] protected class. *Veale v. Fla. Dep't of Health,* 2013 WL 5703577, at *3 (M.D. Fla. July 29, 2013). In her Amended Complaint, Plaintiff alleged that she is a woman and was not only qualified for the position in which she was hired for, but qualified to receive promotions. (Doc. # 28 ¶¶ 53-54).

Additionally, Plaintiff alleged that, shortly after she made the complaint about gender discrimination, Defendant subjected Plaintiff to numerous disciplinary actions for conduct that it did not reprimand its male employees for. (Doc. # 28 ¶ 56). Plaintiff was only approximately two (2) of the ten (10) women who worked as General Utility Workers. (Doc. # 28 ¶ 57). Additionally, Plaintiff and other similarly-situated women who worked as General Utility Workers were given harsher, and more frequent, reprimands than their male counterparts received for the same conduct. (Doc. # 28 ¶ 58). As described herein, Plaintiff has also suffered significant monetary damages. (Doc. # 28 ¶ 60). Plaintiff complained about this disparate treatment to Defendant by objecting to

Defendant's discriminatory gender employment practices to Defendant's Human Resources ("HR") representatives. (Doc. # 28 ¶ 67).

## VII. LEAVE TO AMEND

If for any reason this Honorable Court is inclined to grant any part of Pepperidge Farms' Motion to Dismiss, Plaintiff respectfully requests that she be given leave to file an Amended Complaint in order to further flesh out the factual allegations regarding Plaintiff's claims.

## CONCLUSION

**WHEREFORE**, for all the aforementioned reasons, Plaintiff respectfully requests the Court deny Pepperidge Farms' Motion to Dismiss Plaintiff's First Amended Complaint and order Pepperidge Farms to answer to Plaintiff's Amended Complaint and for any other relief as this Court deems proper.

**DATED** this 17th day of March, 2020.

> Respectfully submitted,
>
> */s/ Patrick K. Elliott*
> **PATRICK K. ELLIOTT**
> Florida. Bar Number: 1000970
> **THE LAW OFFICE OF PATRICK K. ELLIOTT, PLLC**
> 100 S. Ashley Drive, Suite 600
> Tampa, FL 33602
> Direct Dial: (813) 379-3090
> Facsimile:   (813) 433-5126
> Email: elliottp@employmentandconsumerlaw.com
> Email: assistant@employmentandconsumerlaw.com
> ***Attorney for Plaintiff***

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on March 17, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all parties of record.

*/s/ Patrick K. Elliott*
**PATRICK K. ELLIOTT**