UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

STEPHANIE DICKENS,

    Plaintiff,

v.                                      CASE NO.: 8:19-cv-02529-TPB-AEP

PEPPERIDGE FARM INCORPORATED,

    Defendant.
_____/

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

    Plaintiff, STEPHANIE DICKENS ("Plaintiff"), by and through undersigned counsel, and pursuant to this Court's July 23, 2020 Order granting Plaintiff leave to file an Amended Complaint (Doc. 40), hereby brings this action against Defendant, PEPPERIDGE FARM INCORPORATED ("Defendant"). In support of her claims, Plaintiff states as follows:

**JURISDICTION AND VENUE**

    1.    This is an action for damages, exclusive of interest, fees, and costs, and for declaratory relief, for violations of the Florida Private Whistleblower's Act ("FPWA"), Fla. Stat. § 448.102 and the Florida Civil Rights Act of 1992, as amended ("FCRA"), Fla. Stat. § 760.01 due to Defendant's unlawful employment practices.

    2.    Venue is proper in this Court because all the events giving rise to these claims occurred in Polk County, Florida.

**PARTIES**

    3.    Plaintiff is a female resident of Lakeland, Polk County, Florida.

4. Defendant is a national food processor that is organized under the laws of Connecticut and operates food processing plants throughout the United States, including in Lakeland, Polk County, Florida.

## ADMINISTRATIVE PREREQUISITES

5. On August 29, 2018, DICKENS sent a letter to the U.S. Equal Employment Opportunity Commission (EEOC) providing detailed allegations of discrimination against PEPPERIDGE FARM INCORPORATED and asking that the EEOC investigate her claims. In the letter, DICKENS alleged she was the subject of unlawful discrimination, based upon her gender. At that time, DICKENS became an "aggrieved person" as defined in § 760.02(10), Florida Statutes (2016). A copy of DICKENS' letter is attached as **Exhibit A.**

6. On October 9, 2018, DICKENS sent a fax to the EEOC including her charge number (511-2018-03478) stating that she would like to confirm her appointment with the EEOC. A copy of DICKENS' fax is attached as **Exhibit B.**

7. On October 10, 2018, DICKENS sent a second fax to the EEOC including her charge number (511-2018-03478) attempting to confirm her appointment with the EEOC scheduled for October 11, 2018 at 1:30 p.m. A copy of DICKENS' fax is attached as **Exhibit C.**

8. On March 25, 2019, DICKENS filed a Charge of Discrimination formally recognizing her prior complaints of discrimination to allow the EEOC to open a formal investigation against PEPPERIDGE FARM INCORPORATED. A copy of DICKENS' Charge of Discrimination, EEOC Charge No. 511-2018-03478 is attached as **Exhibit D**. This Charge was duel filed with the FCHR under the workshare agreement between the EEOC and the FCHR.

9. On March 26, 2019, the EEOC sent a letter to DICKENS referencing her written correspondence in which she alleges employment discrimination. A copy of the EEOC letter is attached as **Exhibit E.**

10. On April 29, 2019, the EEOC stamped DICKENS official Charge of Discrimination numbered 511-2018-03478 as received. *See* Exhibit D.

11. More than 180 days have passed since DICKENS filed her Charge of Discrimination. Neither DICKENS nor the undersigned counsel has received notice of the FCHR's disposition. The FCHR's non-response is to be treated as a finding of "reasonable cause" pursuant to § 760.11(8), Florida Statutes (2016).

## **GENERAL ALLEGATIONS**

12. At all times material hereto, Plaintiff was an employee of Defendant within the meaning of the FCRA and FPWA.

13. At all times material hereto, Defendant employed fifteen (15) or more employees. Thus, Defendant is an "employer" within the meaning of the FCRA, Fla. Stat. Section 760.02(7).

14. At all times material hereto, Plaintiff was an "employee" of Defendant within the meaning of the FPWA, Fla. Stat. § 448.101(2).

15. At all times material hereto, Defendant was an "employer" within the meaning of the FPWA, Fla. Stat. § 448.101(3).

16. As a direct and proximate result of repeated discrimination, retaliation and her resulting demotion, Plaintiff has suffered actual damages: loss of income, loss of opportunity for future income, loss of benefits, and loss of future pay increases. In addition, she has suffered and continues to suffer loss of her professional and personal reputation, emotional distress, mental anguish, embarrassment, and humiliation.

17.     Plaintiff has incurred costs and attorney's fees in bringing this matter.

## FACTUAL ALLEGATIONS REGARDING THE TIMELINESS OF PLAINTIFF'S CHARGE OF DISCRIMINATION

18.     Plaintiff, without the assistance of counsel, originally contacted the Equal Employment Opportunity Commission ("EEOC") on or about July 2018 and an appointment was made for August 2018.

19.     The EEOC cancelled Plaintiff's appointment and rescheduled her for October 2018.

20.     In October 2018, the EEOC conducted an interview with Plaintiff and completed the EEOC intake questionnaire.

21.     Plaintiff provided the relevant information to support her claims.

22.     Nevertheless, Plaintiff's Charge of Discrimination was not "received" by the EEOC until purportedly April 29, 2019, even though Plaintiff's signature is dated March 25, 2019.

23.     Two (2) days later, on May 1, 2019, the EEOC issued Plaintiff a Right to Sue letter.

24.     Plaintiff was in constant contact with the EEOC throughout the approximate eight (8) months between her letter dated August 29, 2018 and her Charge of Discrimination getting filed by the EEOC.

25.     In fact, Plaintiff emailed the EEOC Investigator on several occasions after she signed the charge to include additional information about additional incidents as Plaintiff checked the box indicating that the discrimination Defendant subjected her to was a "Continuing Action."

26.     However, the EEOC did not include this information in the charge of discrimination that it helped Plaintiff prepare and file.

27. Plaintiff's completed questionnaire constitutes the initial filing of Plaintiff's Complaint. 29 C.F.R. § 1601.12 states the following:

> **§ 1601.12 Contents of charge; amendment of charge**
>
> (a) Each charge should contain the following:
>
> > (1) The full name, address and telephone number of the person making the charge except as provided in Fla. Stat. § 1601.7;
> >
> > (2) The full name and address of the person against whom the charge is made, if known (hereinafter referred to as the respondent);
> >
> > (3) A clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices: *see Id.* § 1601.15(b);
> >
> > (4) If known, the approximate number of employees of the respondent employer or the approximate number of members of the respondent labor organization, as the case may be; and
> >
> > (5) A statement disclosing whether proceedings involving the alleged unlawful employment practice have been commenced before a State or local agency charged with the enforcement of fair employment practice laws and, if so, the date of such commencement and the name of the agency.
>
> (b) Notwithstanding the provisions of paragraph (a) of this section, **a charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of**. A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received. A charge that has been so amended shall not be required to be redeferred. (emphasis added).

28. Plaintiff's completed Questionnaire contained the full name and address of the company against whom the charge was made. A clear and concise statement of facts, as set out within Plaintiff's complaint, included pertinent dates that constituted the alleged unlawful

employment practices.[1]

29.     Plaintiff's August 29, 2018, letter is enough to initiate a charge to which her formal charge relates back.[2]

30.     As such, Plaintiff's claims under the FCRA are timely.[3]

**FACTUAL ALLEGATIONS REGARDING RETALIATION UNDER THE FPWA**

31.     In 2009, Plaintiff began working for Defendant in its bakery department. During her lengthy tenure with Defendant, Plaintiff was promoted to General Utility Worker, and she worked in this capacity until her demotion on or about April 2018 and continues to work in a lesser role.

32.     During Plaintiff's employment with Defendant, Plaintiff satisfactorily performed the duties of her position in a competent manner.

33.     Nevertheless, Defendant subjected Plaintiff to adverse employment actions because of her opposition to Defendant's unlawful and unsanitary national food production process

---

[1] *See Clark v. Coats & Clark, Inc.,* 865 F.2d 1237, 1240 (11th Cir. 1989) (Eleventh Circuit reversed district court's dismissal of an age discrimination claim because the filing of an EEOC intake questionnaire constituted timely filing of a charge.); *see also Berry v. Essilor of Am., Inc.*, 123 F. Supp. 2d 1342, 1346 (M.D. Fla. 2000) ("It is in keeping with the purpose of the Act to keep the procedure initiating action simple…All that is required is that it [the charge] give sufficient information to enable the EEOC to see what the grievance is all about.") (quoting *Jenkins v. United Gas Corp.*, 400 F.2d 28, 30 n.3 (5th Cir. 1968)).

[2] This relation back has been approved by the United States Supreme Court. The United States Supreme Court examined "the validity of an EEOC regulation permitting an otherwise timely filer to verify a charge after the time for filing has expired." *Edelman v. Lynchburg Coll.*, 535 U.S. 106, 109, 122 S. Ct. 1145, 152 L. Ed. 2d 188 (2002). Edelman sent a letter to the EEOC claiming discrimination on the bases of gender, national origin, and religion but did not make an oath or affirmation. *Id.* at 109. Edelman received a Form 5 Charge of Discrimination; however, he did not return the verified form until 313 days after the alleged discriminatory act. *Id.* at 109-10. The Supreme Court held that defects in oaths or affirmations can be cured by an employee, even after the filing deadline has passed, and that the filing of a sworn charge "relates back" to the filing date of the unsworn complaint. *Id.* at 119.

[3] EEOC regulation 29 C.F.R. § 1601.12(b) provides that "[a] charge may be amended to cure technical defects or omissions, including failure to verify the charge..." The regulation maintains that such amendments "will relate back to the date the charge was first received." The Court in *Edelman* construed § 706 of Title VII (42 U.S.C. § 2000e-5) "to permit the relation back of an oath omitted from an original filing" finding "the EEOC's relation-back regulation to be an unassailable interpretation of § 706." *Edelman*, 535 U.S. at 116, 117. In *Wilkerson* the court considered (on summary judgment) the following three factors: (I) the communication between the plaintiff and the EEOC; (2) the EEOC intake questionnaire form itself; and (3) the response by the EEOC to the completed questionnaire. *See Wilkerson v. Grinnell Corp.,* 270 F. 3d 1314, 1321 (11th Cir. 2001); *see also Clark v. Coats & Clark, Inc.,* 865 F. 2d 1237 (11th Cir. 1989).

by creating a hostile work environment for Plaintiff that fundamentally altered the terms and conditions of her employment.

34.     At all times relevant hereto, the Defendant was acting through its agents, servants, and employees, who were acting within the scope of their authority, course of their employment, and under the direct control of the Defendant.

35.     At all times material hereto, Defendant was a food processing "Plant" within the meaning of 21 C.F.R. § 117.3.

36.     21 C.F.R. § 117.20(a) mandates that food processing plants, such as the facility Defendant operates, "must be kept in a condition that will protect against the contamination of food."

37.     Additionally, 21 C.F.R. § 117.35(c) states that Defendant was required to perform to ensure the cockroach and other pest infestations and dealt with as follows:

**Pest control**. Pests must not be allowed in any area of a food plant. Guard, guide, or pest-detecting dogs may be allowed in some areas of a plant if the presence of the dogs is unlikely to result in contamination of food, food-contact surfaces, or food-packaging materials. Effective measures must be taken to exclude pests from the manufacturing, processing, packing, and holding areas and to protect against the contamination of food on the premises by pests.

38.     As such, Defendant had a legal obligation to ensure that the national food products that it produces and sells to consumers across the United States and Canada are free from food contamination prom pests such as cockroach infestations.

39.     However, due to Defendant's lackadaisical approach to food safety, Defendant failed its obligation and retaliated against Plaintiff because of her opposition to Defendant's unlawful conduct.

40.     During the early morning hours of February 22, 2018, Plaintiff observed that Defendant's gluten tanks, the main machine it uses to process the food products it produces was

infested with cockroaches. The cockroach infestation consisted of roaches, roach feces, and various roach body parts that had gotten inside the wheat gluten tank and were not removed because Defendant failed to maintain pests as mandated by 21 C. F. R. § 117.20(a).

41. Pieces of the cockroach infestation unlawfully contaminated Defendant's food products.

42. When Plaintiff noticed the cockroach infestation, she immediately attempted to follow Defendant's protocol and informed Defendant's sanitation department to remove the cockroach infestation as directed by federal and state regulations.

43. Additionally, federal regulations mandated that Defendant was required to clean the wheat gluten tank to assess the level of infestation and take measures to eradicate such infestation.

44. Plaintiff informed her supervisor, Derick Hall, of the measures that needed to be taken to correct the roach infestation at Defendant's food processing plant.

45. Instead, Defendant chose not to perform the required sanitation needed to rid the gluten tanks of the cockroach infestations and Defendant prohibited Plaintiff from effectuating the required sanitation protocols needed to rid a gluten tank of cockroach infestations.

46. Defendant failed to take remedial action as required by 21 C.F.R.§ 117.35 (c).

47. Additionally, Defendant's decision makers chose to ignore the incident and denied ever knowing about the complaint despite its documentation.

48. In retaliation for her complaints about the handling of the roach infestation in Defendant's wheat gluten tanks, Defendant created a hostile work environment that materially changed the terms and conditions of her employment on or about April 2018 that continues to the present time.

49. Defendant took frivolous disciplinary action against Plaintiff on several occasions, subjected her to heightened scrutiny that was simply not in accordance with Defendant's standard operating procedures, denied her lateral transfers and promotions because she alerted Defendant to, and opposed Defendant's failure to remedy the cockroach infestation.

50. Furthermore, Defendant drastically reduced Plaintiff's pay despite her lengthy tenure, stellar track record and superior knowledge of Defendant's Bakery department. Furthermore, Defendant demoted her to a position of a new hire on or about April 2018.

51. Prior to her complaints about the roach infestation, Plaintiff had rarely been subjected to disciplinary action. However, Defendant punished Plaintiff more harshly than employees who did not make complaints about Defendant's roach infestation.

52. Plaintiff's demotion was no mere slight, but instead an act of retaliation against Plaintiff. Plaintiff's former position as a General Utility Worker at Defendant's facility in Lakeland, Florida was a highly coveted position to Defendant's other employees.

53. Purportedly, Defendant only allows its most skilled employees to be General Utility Worker's because, in order to be a General Utility Worker, you must be able to work any position in Defendant's bakery department at any given time and with little to no notice.

54. Despite Plaintiff's lengthy four (4) year tenure with Defendant and her role as a General Utility Worker, Defendant demoted Plaintiff back to a position of a new hire on or about April 2018. Defendant's demotion of Plaintiff was not in accordance with its standard disciplinary procedures.

55. Plaintiff made $75,867 in 2016, and she made $75,504 in 2017. However, in 2018, Defendant reduced Plaintiff's wages by over fifty percent (50%). Despite making over $75,000 in the prior two (2) years, Defendant dramatically cut Plaintiff's pay to approximately $36,704 in

2018.

56. Each day Plaintiff is damaged because of her unlawful demotion in retaliation for her complaints.

## FACTUAL ALLEGATIONS REGARDING GENDER DISCRIMINATION

57. Plaintiff is a member of a protected class, and on account of her protected status, Plaintiff benefits from the protections of the FCRA.

58. Plaintiff performed the job for which she was hired in a satisfactory manner.

59. During Plaintiff's tenure with Defendant, Defendant systematically discriminated against Plaintiff and other similarly situated women, by denying them essential job promotions and job transfers in favor of men with less seniority and experience. Discovery will reveal that men are promoted in greater numbers than female employees.

60. For example, shortly after making the complaint, Defendant subjected Plaintiff to numerous other disciplinary actions for conduct that it did not reprimand its male employees.

61. Plaintiff was only approximately two (2) of the ten (10) women who worked as General Utility Workers.

62. Additionally, Plaintiff and other similarly situated women who worked as General Utility Workers were given harsher, and more frequent reprimands than their male counterparts were given for the same conduct.

63. Plaintiff was also given a bizarre, five (5) day suspension for a situation that did not warrant such a drastic punishment and was done in retaliation for Plaintiff's complaint about Defendant's unlawful food safety practices.

64. Defendant discriminated against Plaintiff and other similarly situated female employees by subjecting Plaintiff to a hostile work environment that materially altered the terms

and conditions of Plaintiff's employment.

65. Each day Plaintiff is damaged because of her unlawful demotion because of her gender.

66. For example, Plaintiff made $75,867 in 2016, and she made $75,504 in 2017. However, in 2018, Defendant reduced Plaintiff's wages by over fifty percent (50%). Despite making over $75,000 in the prior two (2) years, Defendant dramatically cut Plaintiff's pay to approximately $36,704 in 2018.

67. Defendant's practice of favoring men over women and promoting men instead of women regardless of their seniority and experience is not an isolated occasion but is merely the logical conclusion that resulted from Defendant's discriminatory employment practices that favor men over women.

68. Defendant demonstrates this preference by paying men more and allowing them to have more opportunity for growth within the company than it does to Plaintiff and similarly situated female employees.

69. Plaintiff was routinely passed over for positions that she was entitled to under

Defendant's policies and procedures in favor of males with less experience and less seniority.

70. Thus, Plaintiff was subjected to disparate treatment based on her gender.

71. Plaintiff complained about this disparate treatment to Defendant by objecting to Defendant's discriminatory gender employment practices to Defendant's Human Resources ("HR") representatives.

72. Defendant took no remedial action in response.

73. Defendant retaliated against Plaintiff for invoking her rights under the Florida Civil Rights Act by subjecting her to a hostile work environment in which Plaintiff was denied the

same terms and conditions of employment as similarly situated employees.

## COUNT I
## RETALIATION UNDER THE FPWA

74. Plaintiff realleges and readopts the allegations of paragraphs 1 through 56 of this Complaint, as though fully set forth herein.

75. Plaintiff opposed and refused to participate in Defendant's violation of the food and safety regulations, thereby engaging in protected activity under the FPWA.

76. Defendant retaliated against Plaintiff for engaging in protected activity under the FPWA by subjecting Plaintiff to different terms and conditions of Plaintiff's employment with Defendant as Defendant denied Plaintiff job transfers and promotions, took frivolous and pretextual disciplinary action against Plaintiff, subjected her to harsher scrutiny, suspended Plaintiff for approximately five (5) days in a manner not in accordance with its operating procedures, demoting Plaintiff, and by drastically reducing her pay in further deviance of its own disciplinary policy.

77. Plaintiff was injured by Defendant's violations of the FPWA, for which she is entitled to legal and injunctive relief.

*WHEREFORE*, Plaintiff demands:

    (a)    A jury trial on all issues so triable;

    (b)    That process issue and that this Court take jurisdiction over the case;

    (c)    Judgment against Defendant in the amount of Plaintiff's lost wages, benefits, and other remuneration;

    (d)    Any other compensatory damages allowable at law;

    (e)    All costs, attorney's fees, and reasonable expenses incurred in prosecuting these claims, in accordance with Fla. Stat. § 448.104; and

(f) For such further relief as this Court deems just and equitable.

**COUNT II**
**FCRA VIOLATION**
**(GENDER DISCRIMINATION)**

78. Plaintiff realleges and readopts the allegations of paragraphs 1 through 28 and 57 through 73 of this Complaint, as though fully set forth herein.

79. Plaintiff is a woman and as such, member of a protected class under the FCRA.

80. Plaintiff was subjected to disparate treatment on account of her gender by Defendant's conduct.

81. Plaintiff was also subjected to unwelcome harassment based on her gender.

82. Defendant subjected Plaintiff to harassment that was sufficiently severe or pervasive enough to alter the terms and conditions of Plaintiff's employment with Defendant as Defendant denied Plaintiff job transfers and promotions, took frivolous and pretextual disciplinary action against Plaintiff, subjected her to harsher scrutiny, suspended Plaintiff for approximately five (5) days in a manner not in accordance with its operating procedures, demoting Plaintiff, and by drastically reducing her pay in further deviance of its own disciplinary policy.

83. Defendant knew or should have known of the unwelcome harassment suffered by Plaintiff and failed to intervene or to take prompt and effective remedial action in response.

84. Defendant's actions were willful and done with malice.

85. Plaintiff was injured due to Defendant's violations of the FCRA, for which she is entitled to relief.

***WHEREFORE***, Plaintiff demands:

(a) A jury trial on all issues so triable;

(b) That process issue and this Court take jurisdiction over the case;

    (c)    Compensation for lost wages, benefits, and other remuneration;

    (d)    Reinstatement of Plaintiff to a position comparable to her prior position, or in the alternative, front pay;

    (e)    Any other compensatory damages, including emotional distress, allowable at law;

    (f)    Punitive damages;

    (g)    Prejudgment interest on all monetary recovery obtained.

    (h)    All costs and attorney's fees incurred in prosecuting these claims; and

    (i)    For such further relief as this Court deems just and equitable.

## COUNT III
## FCRA RETALIATION

86.    Plaintiff realleges and readopts the allegations of paragraphs 1 through 28 and 57 through 73 of this Complaint, as though fully set forth herein.

87.    Plaintiff is a member of a protected class under the FCRA.

88.    Plaintiff engaged in protected activity under the FCRA by opposing Defendant's gender discriminatory employment practices.

89.    Defendant retaliated against Plaintiff for engaging in protected activity under the FCRA by subjecting Plaintiff to harassment that was sufficiently severe or pervasive enough to alter the terms and conditions of Plaintiff's employment with Defendant as Defendant denied Plaintiff job transfers and promotions, took frivolous and pretextual disciplinary action against Plaintiff, subjected her to harsher scrutiny, suspended Plaintiff for approximately five (5) days in a manner not in accordance with its operating procedures, demoting Plaintiff, and by drastically reducing her pay in further deviance of its own disciplinary policy.

90.    Defendant's actions were willful and done with malice.

91. Defendant took material adverse action against Plaintiff.

92. Plaintiff was injured due to Defendant's violations of the FCRA, for which Plaintiff is entitled to legal and injunctive relief.

*WHEREFORE*, Plaintiff demands:

(a) A jury trial on all issues so triable;

(b) That process issue and that this Court take jurisdiction over the case;

(c) That this Court enter a declaratory judgment, stating that Defendant interfered with Plaintiff's rights under the FCRA;

(d) Compensation for lost wages, benefits, and other remuneration;

(e) Reinstatement of Plaintiff to a position comparable to her prior position, with back pay plus interest, pension rights, and all benefits;

(f) Front pay;

(g) Any other compensatory damages, including emotional distress, allowable at law;

(h) Punitive damages;

(i) Prejudgment interest on all monetary recovery obtained.

(j) All costs and attorney's fees incurred in prosecuting these claims; and

(k) For such further relief as this Court deems just and equitable.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury as to all issues so triable.

Dated this 18th day of November 2020.

                                                                                       Respectfully submitted,

                                                                                       */s/ Jason W. Imler*

**JASON W. IMLER, ESQ.**
Florida Bar No. 1004422
**GARY L. PRINTY, JR. ESQ.**
Florida Bar No. 41956
**PRINTY & PRINTY, P.A.**
3411 W Fletcher Ave, Ste A
Tampa, Florida 33618
(P): (813) 434-0649
(F): (813) 423-3722
Email: garyjr@printylawfirm.com
Jason.imler@printylawfirm.com
toni.harrold@printylawfirm.com
wanda.butler@printylawfirm.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on November 18th, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will send notice to all counsel of record.

*/s/ Jason W. Imler*
**JASON W. IMLER, ESQ.**
Florida Bar No. 1004422
**GARY L. PRINTY, JR. ESQ.**
Florida Bar No. 41956
**PRINTY & PRINTY, P.A.**
3411 W Fletcher Ave, Ste A
Tampa, Florida 33618
(P): (813) 434-0649
(F): (813) 423-3722
Email: garyjr@printylawfirm.com
Jason.imler@printylawfirm.com
toni.harrold@printylawfirm.com
wanda.butler@printylawfirm.com
*Attorney for Plaintiff*